The HUNTER COMPANY, Inc., Appellant,

v.

Sarah Vivian FAIN et al.

No. 3175.

Court of Civil Appeals of Texas.

Eastland.

July 8, 1955.

Rehearing Denied Sept. 9, 1955.

J. G. Harrell, Breckenridge, for appellant.

H. M. Muse, Irvin J. Vogel, Wichita Falls, for appellee.

LONG, Justice.

The parties will carry the same designation as in the trial court. Plaintiffs, Sarah Vivian Fain and Earl Lowrance, instituted this suit against The Hunter Company, Inc., seeking to establish a constructive trust in an overriding royalty of $\frac{2}{64}$ths of a $\frac{7}{8}$ths interest in an oil and gas lease covering the Northwest $\frac{1}{4}$th of Section 8, Block 62, S. P. Ry. Co. Land in Stephens County, Texas, and for the value of their proportionate part of the oil run from said land. Plaintiffs alleged that they owned oil and gas leases covering 668 acres of land in Stephens County, Texas, including the 160 acres involved herein, which leases required that a well be drilled or rentals paid on or before January 20, 1954; that they assigned said leases to defendant, The Hunter Company, Inc., on July 18, 1953 and reserved a $\frac{3}{64}$ths overriding royalty, $\frac{2}{64}$ths of which royalty at the time of this suit is owned by plaintiffs; that oil was being produced from a portion of the leases so assigned and offsetting the 160 acres involved in this suit and that defendant, through negligence and carelessness, failed to pay the rental on said leases including the 160 acres here involved when due and immediately on or about January 21, 1954, sent its land man, and agent, D. R. Beamer, to Wichita Falls, Texas, to enlist the aid of plaintiffs, who had secured the leases from the land owners in the first place, in securing a new lease or

leases on as much of the land as could be obtained. Plaintiffs further alleged that the said Beamer promised them that if they would assist him in securing a new lease or leases on said lands that defendant would take the same for itself and reserve for the plaintiffs the same interest in a new lease or leases so obtained as they had in the old leases; that plaintiffs agreed to such proposition and immediately began to assist in procuring the lease on the 160 acres of land involved in this suit. Plaintiff further alleged that while they were so assisting in obtaining the leases that Beamer took the lease in question from the land owners in defendant's name and did not show the overriding royalty interest of plaintiff therein and declined to convey same or recognize the interest of plaintiffs. Plaintiffs further allege that there is a confidential relationship existing between plaintiffs and defendant. Defendant answered by special exceptions and general denial. Among other defenses interposed it alleged that the agreement sought to be enforced violated Article 7425b–7, Vernon's Ann. Revised Civil Statutes. Upon a trial before the court with the aid of a jury, the jury found in answer to special issues submitted:

"1. That Beamer, acting for Appellant, agreed with Appellees that if they would assist him in securing a new lease that Appellant would take the lease for itself and have reserved for Appellees in said lease the same fractional overriding royalty interest that they had in the lease which had been lost by Appellant for nonpayment of rentals;

"2. That at the time such agreement was made that a confidential relationship existed between Appellees and Appellant;

"3. That Appellees did assist in securing the lease in question in pursuance of the agreement;

"4. That Beamer, by his acts and conduct, made it impossible for Appellees to assist in securing the lease as originally agreed upon;

"5. That Appellees were ready and willing at all times to carry out their agreement with D. R. Beamer;

"In issues 6 and 7, the jury found the amount of oil that had been produced from the lease and the value thereof; and,

"8. That the agreement between D. R. Beamer and Appellees was not that the new lease was to be taken in the name of Appellant only, and that thereafter the overriding royalty interests claimed by Appellees would be conveyed to them separately by assignment or assignments from Appellant."

Based upon the findings of the jury, judgment was rendered for plaintiffs for a ⅙₄th overriding royalty each and for the value of the oil produced from said lease due on said overriding royalty interests up to the date of the trial. From this judgment defendant has appealed.

Special issue No. 1 reads as follows:

"Do you find from a preponderance of the evidence that on or about January 21, 1954, D. R. Beamer, acting as agent of The Hunter Company, Inc., orally agreed with the Plaintiffs, Earl Lowrance and Sarah Vivian Fain, that if they would assist him in securing a new lease, or leases, on as much of the Richels 668 acres of land as could be obtained, that The Hunter Company, Inc., would take the lease on such land for itself and have reserved for the Plaintiffs Earl Lowrance and Sarah Vivian Fain, in said lease or leases the same fractional overriding royalty interest therein that they had in the lease which had been lost by The Hunter Company, Inc., by reason of non-payment of rentals? Answer Yes or No. Answer: 'Yes.'"

Defendant objected to said issue because it did not submit the matter inquired about in the language of the pleadings of plaintiffs, in that, the words "have reserved" are included in the court's charge and the plaintiffs' pleadings read "for itself and

reserved for plaintiffs." The action of the trial court in overruling this exception in submitting the special issues to the jury is assigned as error. The exception to the issue should have been sustained. Plaintiffs, in their first amended original petition, alleged "that B. R. Beamer, acting within the scope of his employment and for and on behalf of said defendant, The Hunter Company, Inc., asked said plaintiffs to enter into a joint adventure with the said B. R. Beamer acting on behalf of The Hunter Company, Inc., in securing a new lease or leases from the land owners on as much of the 160 acres as could be obtained and the said D. R. Beamer promised them that if a new lease or leases could be obtained by his principal, The Hunter Company, Inc., that the said The Hunter Company, Inc., would hold same for itself and the plaintiffs in the same interest in the new lease or leases that they had in the old lease or leases." On the second day of the trial plaintiffs filed a trial amendment in which it was alleged that the said D. B. Beamer orally promised them that if such new lease or leases could be obtained by his principal, The Hunter Company, Inc., that The Hunter Company, Inc. would take the same for itself and reserve for plaintiffs the same interest in the new lease or leases so obtained as they had in the old lease. It will thus be seen that the language of the issue submitted does not follow either the pleadings of plaintiffs in their first amended original petition or in their trial amendment. The law is well settled that if Beamer was to take the leases in the name of The Hunter Company, Inc., and The Hunter Company, Inc., was to hold the lease for plaintiffs, such an oral agreement is an express trust and would violate our Texas Trust Act, Article 7425b–1 et seq., Vernon's Annotated Revised Civil Statutes. See Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256; Morrison v. Farmer, 147 Tex. 122, 213 S.W.2d 813; Howard v. O'Neal, Tex.Civ.App., 246 S.W.2d 907 (NRE); Tolle v. Sawtelle, Tex.Civ.App., 246 S.W.2d 916 (Err. Ref.).

If the agreement was that the lease was to be taken in the names of both The Hunter Company, Inc., and the plaintiffs, then such agreement would not be an express trust but, on the contrary, would be a constructive trust and would not violate the trust act. Fitz-Gerald v. Hull, supra. It will thus be seen that this case hinges upon the construction that should be placed upon the word "reserve" as used in the pleadings and the issues submitted. There is a vast difference between the allegations in the trial amendment which were that Beamer promised that if such lease could be obtained by The Hunter Company, Inc., that The Hunter Company, Inc., would take the same for itself and reserve for plaintiffs the same interest in the new lease as they had in the old lease and the language used in the special issue submitted that The Hunter Company, Inc., would "have reserved" in the lease said overriding royalty interest. In other words, the issue submitted does not conform to the pleadings and cannot be the basis for any judgment in this case.

To our minds the meaning of the issue is not clear. Does it mean that the defendant was to have the lessors in the lease reserve the overriding royalty for the benefit of plaintiffs? If so, the title thereto would remain in said lessors and an unenforceable contract would be created. If it means that the defendant was to reserve the override for the benefit of the plaintiffs, then an express trust would be created. The plaintiffs have plead at all times that the lease was to be taken in the name of the defendant. It is not clear from the issue how the title was to be vested in the plaintiffs. The word "reserve" is defined by Webster's New International Dictionary, Second Edition, thus: To make legal reservation of; to withhold from the operation of a grant or agreement.

If the issue means that defendant was to have the lessor withhold from the lease the overriding royalty for the benefit of plaintiffs, then again an unenforceable agreement would be created. We have given this case our careful consideration. It is difficult to determine whether the agreement relied upon by the plaintiffs is an express trust or a constructive trust. If it is an ex-

press trust then under the settled law of this state it is unenforceable. The title to land should not rest on conjecture or guess work. The plaintiffs relied upon issue No. 1 to support the judgment. It is our considered opinion that it is not sufficient to form the basis for the judgment rendered. It does not follow the pleadings and we are unable to determine just what is meant by the expression contained therein "have reserved for the plaintiffs." We have considered all other points of error raised by the defendant and find no merit in them and they are accordingly overruled.

For the reasons assigned, the judgment of the trial court is reversed and the cause remanded.